397 So.2d 1166 (1981)
Captain Ralph C. TINGLEY, District Nine Supervisor of the Florida Marine Patrol, and State of Florida Department of Natural Resources, Appellants,
v.
David Lloyd ALLEN, Iris Morris Breece, John Delong, Reo U. Hill, David Earl Pigott, David Revell, and James Wideman, Appellees.
No. 80-1235.
District Court of Appeal of Florida, Third District.
April 28, 1981.
Rehearing Denied May 29, 1981.
*1167 Jim Smith, Atty. Gen., and Kent A. Zaiser and Susan Gamble, Asst. Attys. Gen., for appellants.
David Paul Horan and Mark H. Kelly, Key West, for appellees.
Before HENDRY, SCHWARTZ and FERGUSON, JJ.
HENDRY, Judge.
This appeal is taken from a declaratory judgment holding section 370.151(2), Florida Statutes (1979),[1] unconstitutional. We have jurisdiction.[2]
Appellees, Florida residents engaged in the business of commercial shrimping for profit, filed a petition for declaratory judgment[3] in circuit court, citing past arrests and fear of future prosecution under the statute, Duran v. Wells, 307 So.2d 259 (Fla. 2d DCA 1975), as grounds for standing to bring suit. Their petition sought to have the statute declared unconstitutional and to have appellants, Captain Tingley of the Florida Marine Patrol and the State of Florida Department of Natural Resources, temporarily and permanently enjoined from enforcing the statute.
On May 15, 1980, the Circuit Court for the Sixteenth Judicial Circuit rendered a final judgment declaring section 370.151(2), which prohibits unauthorized shrimping in certain described areas of the Tortugas shrimp beds, invalid and enjoining the appellants from enforcing the statute.
Paragraph (a) of section 370.151(2) provides a metes and bounds description of the location of the shrimp beds, and paragraph (b) prohibits all shrimping except live bait production in the area described. Although situated within the state's territorial boundaries (as established in Florida's 1868 Constitution) at the time of the statute's enactment, the shrimp beds, which extend as far as thirty miles into the Gulf at some points, are now partially within and without the state's boundaries. Appellees protest that the statute is an unconstitutional attempt by the State of Florida to regulate the natural resources which are located within *1168 the exclusive jurisdiction of the United States.[4]
The principal issue thus submitted is whether the statute conflicts with federal legislation on the same topic and should therefore be declared constitutionally invalid under the supremacy clause, U.S.Const. art. VI, cl.2. We hold that section 370.151(2) is preempted by federal law and that the portion of the statute which attempts to extend Florida's authority to regulate fishing extraterritorially is unconstitutional.
The court below correctly ruled that the statute conflicts with federal legislation on the same subject. The Submerged Lands Act of 1953, 43 U.S.C. § 1301 et seq., recognized and confirmed title and ownership to all land and natural resources lying beneath navigable waters within the boundaries of the states to the states; reserving the right to natural resources outside the states' boundaries to the United States. The Supreme Court later interpreted the applicability of this act to Florida and firmly established the state's territorial boundary at three marine leagues into the Gulf of Mexico in United States v. Florida, 425 U.S. 791, 96 S.Ct. 1840, 48 L.Ed.2d 388 (1976). More recent legislation, the Fishery Conservation and Management Act of 1976, 16 U.S.C. § 1801 et seq., grants exclusive federal control over all fish within the fishery conservation zone. This zone is described as the area seaward for 200 miles from the territorial limits of each state. The act also specifically prohibits both direct and indirect state regulation beyond state territorial waters, 16 U.S.C. § 1856(a).
Federal laws are the supreme law of the land, and to the extent that state laws or policies are in conflict, federal law governs. United States v. Castellana, 433 F. Supp. 1309, 1316 (M.D.Fla. 1977). Congress has clearly preempted regulation of all fishing in the area between the states' boundaries and 200 miles seaward. The statute at issue is in conflict insofar as it attempts to govern shrimping in the area beyond three leagues from Florida's coastline.
Our finding that the statute conflicts with federal legislation effectively disposes of appellant's contention that Skiriotes v. State of Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941) authorizes Florida to regulate the operations of all fishermen and vessels of this state engaged in fishing both within and without the boundaries of state waters. Skiriotes, held that Florida may govern the conduct of its citizens upon the high seas with respect to matters in which the state has a legitimate interest and where there is no conflict with acts of Congress. Obviously, a conflict does exist in the present situation, and the federal legislation suspends the operation of state laws beyond their territorial boundaries.
For the reasons stated, we hold that section 370.151(2) is unconstitutional to the extent that it attempts to exercise state authority over the area of the Tortugas shrimp beds which is beyond state boundaries.
Accordingly, the declaratory judgment under review is affirmed except as to that portion of section 370.151(2)(a) which lies within three marine leagues from Florida's coastline.
Affirmed in part and reversed in part.
NOTES
[1] Section 370.151(2), Florida Statutes, (1979), provides:

(2) Tortugas Shrimp Bed is described as follows:
(a) Begin at Coon Key Light in Collier County; thence proceed on a straight line to a point which is located at 24° 54'30" north latitude and 81° 50'30" west longitude; thence proceed on a straight line to a point located at 24° 48'00" north latitude and 82° 00'00" west longitude; thence proceed on a straight line to a point located at 24° 45'00" north latitude and 82° 22'30" west longitude; thence proceed on a straight line to Rebecca Shoals Light; thence proceed on a straight line to R.B. Bell Buoy; thence proceed on a straight line to Cosgrove Shoal Light; thence proceed on a straight line to Sand Key Light; thence proceed northerly to the abandoned lighthouse located in the southwest portion of Key West; thence along the south and east meandered shoreline of the Florida Keys and the connecting viaducts between said Keys to 80° 30'00" west longitude; thence north until a point on the mainland is reached; thence proceed west and north along the coast of the mainland of Florida until a point is reached which is located due north of the aforementioned Coon Key Light located in Collier County; thence due south to Coon Key Light, the point of beginning.
(b) No shrimping shall be permitted at any time except live bait production as provided in this chapter in the above-described area.
[2] Fla.R.App.P. 9.030(b)(1)(A).
[3] Ch. 86, Fla. Stat. (1979).
[4] Appellee Reo Hill has challenged this statute before. In a 1978 criminal proceeding against him, the Monroe County Circuit Court ruled the statute unconstitutional. On direct appeal however, the Florida Supreme Court reversed, holding that since Hill was charged with shrimping in the prohibited area at a point within the territorial waters of the state, the statute could be legally applied to him and he lacked standing to challenge the validity of a portion of the statute which did not affect him. See State v. Hill, 372 So.2d 84 (Fla. 1979).