LARRY G. SMITH, Judge.
This case presents for our review a summary judgment entered by the trial court holding unconstitutional Section 370.1105, Florida Statutes (1980 Supp.), making it unlawful to fish for saltwater finfish with any trap, or to possess any fish trap other than traps specifically excepted from operation of the act. The trial court further held that if the act, or any portion thereof, is constitutional, it has no extraterritorial effect, but is enforceable only within the territorial waters of the State of Florida. We reverse.
The trial judge found the statute imper-missibly vague in that it fails to define the operative word “trap.” The trial court acknowledged that there would be no difficulty in conceiving the nature of a “fish trap” as distinguished from other devices for catching fish. However, the trial court was concerned with the problem encountered in attempting to distinguish fish traps that are lawful from those that are not — keeping in mind that the act excepts from its operation certain lawful traps, i.e., crab, crawfish, or shrimp traps specifically permitted by other statutory provisions, pinfish traps not exceeding certain dimensions, and black sea bass traps having certain specifications and dimensions.
We disagree with the trial court’s conclusion that the absence of a statutory definition of the fish traps prohibited renders the statute unconstitutionally vague. The problem here is similar to that encountered by the Court in State v. Hagan, 387 So.2d 943 (Fla.1980), in which the terms “trawl net” and “trawling operation” were found to have a definite meaning as used in connection with the fishing industry, and the statute in which these terms were used was found valid. In Hagan, the Court resorted to a common dictionary definition of the term “trawl net,” and in finding the questioned term sufficiently definite, observed that a statute may satisfy due process requirements, “even though it contains general terms and does not furnish detailed plans and specifications of the act or conduct proscribed.” Id. at 946.
The term “fish trap” is defined in Webster’s Third New International Dictionary, at 859 (1971), as “a device for catching fish that consists of a net or other structure which diverts the fish into an enclosure so arranged that egress is more difficult than ingress.” It is our considered conclusion that the term “fish trap” is not “so vague that men of common intelligence must necessarily guess at its meaning,” and that as these terms are used in the statute, they provide “a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.” State v. Hagan, supra, at 945, citing Florida authorities.
As for the matter of distinguishing between “legal” and “illegal” fish traps, which proved troublesome to the trial judge, our reading of Sections 370.13-370.-15, discloses that these statutory provisions, *1328 relating to crab, crawfish, and shrimp traps, contain details with respect to size, configuration, manner of use, and permit requirements, which provide sufficient means for distinguishing them from unauthorized fish traps proscribed by Section 370.1105. Similarly, subsections 370.1105(l)(b) and (c) provide, by means of configuration and dimensions, sufficient distinguishing features to avoid confusing the small, permissible “pinfish” or “black sea bass” traps from those that are prohibited.
Finally, on the “vagueness” issue, it is proper for the court to consider the particular meaning of statutory terms as they are used in connection with the industry which is being regulated. State v. Hagan, supra, at 946. Given the extent to which the Florida Legislature has addressed itself to the various kinds and usages of traps for catching marine life, and its demonstrated recognition of its previous enactments relative to traps of various kinds, we are confident that the Legislature knew and considered the common usage of fish traps in Florida and in the federal fisheries conservation zone when it enacted Section 370.-1105.
Turning now to Section 370.1105(2), that portion of the statute makes it unlawful to possess any “fish trap” other than those specifically permitted by law. We will not concern ourselves, at this juncture, with the contradictory positions taken by appellant relative to its enforcement of this particular provision. Whether appellant determines, administratively, to enforce or attempt to enforce the penalties for possession of prohibited fish traps upon dry land, docks and wharfs, or fishing vessels on or beyond the territorial waters of the state, is of no moment to our consideration of the statute’s validity. Appellee has asserted, and we agree, that the issue as presented to the trial court called for an adjudication of the facial validity of the statute, and not its validity as applied or interpreted by appellant.
A state may regulate the method of taking fish, or may prohibit the use of certain devices in the taking of fish. In order to enforce such regulations, the state may make possession of such unlawful devices a criminal offense. In addition, it may authorize the forfeiture, or destruction of such devices.[1]
We note the observation of the trial judge that he felt it unnecessary to interpret the “possession” portion of the statute. However, in order that all issues might be addressed on appeal of the case, the trial judge did interpret that portion, declaring that there was nothing in the language of the statute that would disclose any intent or purpose to limit its operation to the possession of fish traps in and beyond Florida’s territorial waters, but not upon land. We agree with the trial court’s interpretation as to the scope of the statute, as do appellees, but we disagree with the trial court’s determination that this portion of the statute is overbroad.
A statutory enactment is void on its face, as “overbroad,” when it sweeps within its ambit constitutionally protected activities as well as unprotected activities. There being no constitutional protection of the right to possess fish traps, this statute is *1329 not void for overbreadth. Cf., Spears v. State, 337 So.2d 977 (Fla.1976); W. J. W. v. State, 356 So.2d 48 (1st DCA 1978).
Appellee next asserts that congress has preempted state regulation of fishing within the National Fisheries Conservation Zone by enacting the Fishery Conservation and Management Act of 1976, 16 U.S.C., Sections 1801, et seq.[2] In Tingley v. Allen, 397 So.2d 1166 (Fla. 3rd DCA 1981), the Third District interpreted 16 U.S.C., Section 1856(a) as specifically prohibiting both direct and indirect regulation of fishing by a state beyond its territorial boundaries. Section 1856(a) provides:
Except as provided in subsection (b) of this section, nothing in this chapter shall be construed as extending or diminishing the jurisdiction or authority of any state within its boundaries. No state may directly or indirectly regulate any fishing which is engaged in by any fishing vessel outside its boundaries, unless such vessel is registered under the laws of such state. (emphasis ours).
The California Supreme Court, when confronted with a challenge to the extraterritorial application of its prohibition of the use of spotter aircraft for the taking of swordfish, concluded:
. .. [W]e conclude that Section 1856(a), fairly read, is intended to permit a state to regulate and control the fishing of its citizens in adjacent waters, when not in conflict with federal law, when there exists a legitimate and demonstrable state interest served by the regulation, and when the fishing is from vessels which are regulated by it and operated from ports under its authority, (citations omitted).
People v. Weeren, 26 Cal.3d 654, 163 Cal.Rptr. 255, 607 P.2d 1279 (Cal.1980), cert. denied, 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45.
We are persuaded by the reasoning of the California court.[3] There can be no doubt that Florida has a substantial interest in the preservation and protection of its vast and valuable marine resources. An array of commercial and sport fishing occurs within the boundaries of the Sunshine State, from bone fishing on the southern flats to oyster tonging in Apalachicola Bay. The instant statute, enacted by the Legislature after open and active public debate, is aimed at protecting a portion of this valuable economic resource. Following the lead of the California court, we have examined the applicable federal regulations[4] and find none relating to the use of fish traps. In the absence of federal regulation in this area, and in light of Florida’s demonstrable state interest, we conclude that the statute is constitutional. The question of what constitutes sufficient registration to avoid the prohibition against state regulation imposed by 16 U.S.C., Section 1856(a), is not now before us, and we will express no opinion on the subject.
The final issue calls for our review of the trial court’s determination that even if constitutional, the statute applies only to the territorial waters of the State of Florida. We observe at the outset that in so ruling the trial court was applying precedent established by this court in Burns v. Rozen, 201 So.2d 629 (Fla. 1st DCA 1967). Therefore, unless we recede from our decision in Burns v. Rozen or find grounds upon which we may distinguish its holding, this court would be bound to uphold the ruling of the trial court on this point.
We observe, initially, that we agree with appellee’s assertion that the question presented is not one of the constitutional authority of a state to regulate conduct beyond its territorial limits, but rather, is *1330 one of statutory construction.[5] Both sides agree, as they did in Burns v. Rozen, that the State of Florida has the power to enact legislation “regulating and controlling the operation of vessels and acts of citizens of this state on water outside the territorial limits of the State of Florida as well as on water within its territorial limits.” Burns v. Rozen, supra, at 630, citing Skiriotes v. State of Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941), and United States v. States of Louisiana, etc., 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960).
In Burns v. Rozen, this court, relying upon the general rule as stated in 50 Am. Jur., Statutes, Section 487, declared that “[extraterritorial effect of an enactment is not to be found by implication.” 201 So.2d at 631. Applying this rule, the Burns court found that nowhere in the statute under consideration was to be found any express intention that its provisions were to be given extraterritorial effect. In response to appellant’s contention that such intention is to be found in the “history, objective and purpose of the statute . ..,” the Bums court proceeded with further inquiry, leading it to related statutory provisions which indicated that the term “salt water,” as used in the purse seine statute under construction, would be construed to refer only to the territorial waters of Florida. In this respect, the purse seine law dealt with by the court in Burns was not, as appellees suggest, “absolutely silent” as to the geographic territory in which the law was intended to operate, and it is clear that the court found “by implication” from the use of the term “salt water,” the intent to make the statute apply only to territorial waters. The statute in Burns and the statute in the case before us are similar only in that there is absent from both statutes any “express intention” that their provisions are to be given extraterritorial effect.
We think the differences between the statute we have under consideration here, and the one considered in Burns, are significant enough to merit a departure from the strict rule announced in Burns, which, as indicated, prohibits giving a statute extraterritorial effect by implication. The statute in Burns prohibited the “use” of purse seines, etc., for the taking of food fish. The fish trap statute here prohibits not only the use of fish traps, excepting those specifically permitted by law; it also prohibits the possession of such traps. As appellant points out, if we give only territorial effect to the statute, it would be rendered ineffective, because it is clear that the citizens of Florida, or fishing vessels registered in or using Florida ports could not fish or carry fish lawfully caught beyond Florida’s territorial waters without ultimately crossing the territorial waters of Florida, in violation of the law. Nor could a person lawfully possess on land trap-caught fish anywhere in Florida, even if the fish were caught beyond the territorial waters of the state. Had the Legislature intended enforcement of the fish trap law only within the boundaries of the state, it would not have included the possession and landing prohibitions, because these could not be enforced without proof of use of traps in Florida waters, a separate violation. Appellants make a convincing argument that the possession and landing provisions indicate a legislative intent that the law should apply extraterrito-rially. Without extraterritorial enforcement, significant provisions of the law would be ineffective.
For the foregoing reasons, we conclude that Section 370.1105, Florida Statutes, when construed in the light of the purposes and objective sought to be accomplished, is intended to have extraterritorial effect. Because we acknowledge that our holding today is facially at odds with fairly strong language to the contrary found in Burns v. Rozen, we certify the following question to the Florida Supreme Court, as a matter of great public interest having statewide implications:
*1331 Does Section 370.1105, Florida Statutes (1980 Supp.), apply to waters outside the territorial boundaries of the State of Florida, notwithstanding the absence of a provision expressing the intention that its provisions are to be given extraterritorial effect?
The judgment appealed from is REVERSED.
ROBERT P. SMITH, Jr., C. J., and WIG-GINTON, J., concur.

. Miller v. McLaughlin, 281 U.S. 261, 50 S.Ct. 296, 74 L.Ed. 840 (1930). Miller, a Nebraska resident, brought suit to enjoin the enforcement of a Nebraska statute prohibiting the use of fish nets, traps and seines in the waters of the state and making possession of these devices unlawful. He alleged that he had such devices in his possession which he purchased before enactment of the law, and which were used exclusively in taking fish from the Iowa (which permitted the practice) side of the Missouri River.
Writing for the Court, Justice Brandéis said, inter alia:
The claim under the 14th Amendment is also groundless. A state may regulate or prohibit fishing within its waters (citations omitted); and, for the proper enforcement of such statutes may prohibit the possession within its borders of the special instruments of violation, regardless of the time of acquisition or the protestations of lawful intentions on the part of a particular possessor, (citations omitted).
at 264. See also, 35 Am.Jur.2d, Fish and Game, § 47.

. If appellee is correct, the statute would be constitutionally invalid, U.S.Const., Art. VI, cl. 2.

. The court in Tingley did not indicate that the appellees’ vessel was “registered” in the State of Florida. Consequently, we cannot determine if our decision in this case conflicts with that decision. We note, however, that at least one of the appellees in Tingley had earlier challenged the statute there under attack. 397 So.2d at 1168, n. 4.

.50 C.F.R., ch. VI.

. No question was raised, either in the circuit court or here, of whether the court should decide the question of statutory construction or remit the parties to administrative remedies on that question.