453 So.2d 1351 (1984)
SOUTHEASTERN FISHERIES ASSOCIATION, INC., et al., Petitioners,
v.
DEPARTMENT OF NATURAL RESOURCES, State of Florida, Respondent.
No. 62288.
Supreme Court of Florida.
April 26, 1984.
Rehearing Denied September 10, 1984.
Robert M. Rhodes, H. Michael Madsen, James C. Hauser, Barry H. Barnett and Cari L. Roth of Messer, Rhodes & Vickers, Tallahassee, for petitioners.
Jim Smith, Atty. Gen., and Bruce Barkett, Asst. Atty. Gen., Tallahassee, for respondent.
Jack M. Skelding, Jr. of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, *1352 for Florida League of Anglers, Inc., amicus curiae.
OVERTON, Justice.
This is a petition to review a decision of the First District Court of Appeal reported as State, Department of Natural Resources v. Southeastern Fisheries Ass'n, 415 So.2d 1326 (Fla. 1st DCA 1982). The district court found Florida's fish trap law, section 370.1105, Florida Statutes (Supp. 1980), to be constitutional and concluded that the law is enforceable by the state in its territorial waters as well as in the extra-territorial waters beyond Florida. The district court certified the following question to be one of great public importance:
Does Section 370.1105, Florida Statutes (1980 Supp.), apply to waters outside the territorial boundaries of the State of Florida, notwithstanding the absence of a provision expressing the intention that its provisions are to be given extraterritorial effect?
415 So.2d at 1331. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. While this case was pending before this Court, the United States District Court for the Southern District of Florida held that the subject statute, to the extent it applied to extra-territorial waters, had been preempted by the federal government and was unconstitutional. Bethell v. Florida, No. 82-1516-CIV-JWK (S.D.Fla. Sept. 29, 1983). We asked the parties to submit supplemental briefs on the preemption issue.
For the reasons expressed, we quash, in part, the decision of the First District Court of Appeal, answer the certified question in the negative, and hold that in order to enforce the unlawful-possession provisions of the statute the state must establish the intent to use the traps in waters within the territorial limits of the state.
The petitioner, Southeastern Fisheries, has asserted (1) that the statute is void for vagueness and overbreadth and (2) that the statute cannot now be enforced in the extra-territorial waters beyond Florida, particularly in view of the asserted federal preemption.
The statute in question, section 370.1105, Florida Statutes (Supp. 1980), makes it unlawful to fish for saltwater finfish with any traps, or to possess any fish trap other than those traps specifically exempted by the act. The act, however, does not expressly state that its provisions apply in the extra-territorial waters beyond Florida. The statute reads as follows:
(1) It is unlawful for any person, firm, or corporation to set, lay, place, or otherwise attempt to fish for saltwater finfish with any trap other than:
(a) A crab, crawfish, or shrimp trap specifically permitted under s. 370.13, s. 370.135, s. 370.14, or s. 370.15;
(b) A pinfish trap not exceeding 2 feet in any dimension, with a throat or entrance not exceeding 3 inches in height by three-quarters of an inch in width; or
(c) A black sea bass trap which has a biodegradable panel and a throat or entrance, the narrowest point of which is not more than 5 inches in height by 2 inches in width and the outer dimensions of which do not exceed 2 feet in height, 2 feet in width, and 2 feet in depth. However, such traps may be used only north of latitude 27° N.
(2) It is unlawful for any person, firm, or corporation to possess any fish trap other than a trap specified in paragraph (a), paragraph (b), or paragraph (c) of subsection (1) or to land, take, sell, or offer to sell any saltwater finfish caught by any trap other than a trap specified in paragraph (a), paragraph (b), or paragraph (c) of subsection (1).
(3) Any person who violates any provision of this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(4) Any vessel, vehicle, or equipment used in violation of this section, and any *1353 fish caught with a trap in violation of this section, shall be seized and may be forfeited.
Petitioners brought a declaratory judgment action seeking the proper construction of the statute. In a motion for summary judgment, petitioners attacked the constitutional validity of the statute. The trial court granted the summary judgment, finding (1) that if the statute is constitutional it is only enforceable in the state's territorial waters because the statute does not clearly indicate a legislative intent to regulate conduct in the extra-territorial waters beyond Florida; (2) that the statute is unconstitutional because it is impermissibly vague in that it fails to define the term "illegal fish trap;" and (3) that the statute is unconstitutionally "overbroad" because it prohibits the mere possession of illegal fish traps on dry land.
The district court reversed and concluded "that the term `fishtrap' is not `so vague that men of common intelligence must necessarily guess at its meaning.'" 415 So.2d at 1327 (citing State v. Hagan, 387 So.2d 943 (Fla. 1980)). As these terms are used in the statute, the district court found, "they provide `a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.'" Id. In concluding that the statute is not vague, the district court relied on this Court's decision in State v. Hagan, in which the terms "trawl net" and "trawling operation" were found to have a definite meaning in the fishing industry sufficient to satisfy due process requirements. The district court also found that the statute is not overbroad because there is no constitutional right to possess fish traps. Finally, the district court held that although there is absent from the statute an express legislative intent that it apply extra-territorially, "the possession and landing provisions [of the statute] indicate a legislative intent that the law should" so apply. 415 So.2d at 1330. In so holding, the district court receded from the principle it enunciated in Burns v. Rozen, 201 So.2d 629, 631 (Fla. 1st DCA 1967), that "[e]xtraterritorial effect of an enactment is not to be found by implication."
On the first point, we agree with the district court that the statute is neither overbroad nor vague. Too often, courts and lawyers use the terms "overbroad" and "vague" interchangeably. It should be understood that the doctrines of overbreadth and vagueness are separate and distinct. The overbreadth doctrine applies only if the legislation "is susceptible of application to conduct protected by the First Amendment." Carricarte v. State, 384 So.2d 1261, 1262 (Fla.), cert. denied, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980) (citing Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)). See also McKenney v. State, 388 So.2d 1232 (Fla. 1980); State v. Ashcraft, 378 So.2d 284 (Fla. 1979). See generally Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970). The vagueness doctrine has a broader application, however, because it was developed to assure compliance with the due process clause of the United States Constitution. The overbreadth argument is clearly not appropriate here because the possession and use of fish traps are not activities protected by the first amendment.
The fish trap statute can, however, be challenged as vague. A vague statute is one that fails to give adequate notice of what conduct is prohibited and which, because of its imprecision, may also invite arbitrary and discriminatory enforcement. In determining whether a statute is vague, common understanding and reason must be used. Where a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning. Hagan. Further, courts cannot require the legislature to draft laws with such specificity that the intent and purpose of the law may be easily avoided. Courts must determine whether *1354 or not the party to whom the law applies has fair notice of what is prohibited and whether the law can be applied uniformly.
In the instant case we agree with the district court that the fish trap statute places fishermen on notice that fish traps are unlawful, and that there are certain exceptions which are sufficiently described in the statute. We hold that the statutory prohibition of the use and possession of certain types of fish traps, as expressed in section 370.1105, with specific exclusions for lawful traps, is constitutional. If the statutory definition of "fish trap" were more precise, then the purpose of the statute could be easily circumvented. Our conclusion is in accordance with the Hagan rationale. We find that the term "fish trap" is not so vague that persons of common intelligence must guess at its meaning. More importantly, the term has a definite meaning within the fishing industry. We further conclude that the law is sufficiently definite to be reasonably and uniformly enforced.
The certified question concerns the application of section 370.1105 beyond state waters when evidence of that intent is not expressed in the statute. If we find there was an intent that this statute was to apply in extra-territorial waters beyond Florida, we must then determine whether the federal government has preempted the regulation of the use of fish traps in these extra-territorial waters.
At the outset we recognize that the state can regulate and control the operation of vessels and the acts of its citizens in waters outside Florida's territorial limits, provided, however, that the federal government has not preempted state regulation. See Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941). The Florida Legislature has expressly done so in other instances. For example, section 370.15(2)(a), Florida Statutes (1979), makes it "unlawful for any person, firm or corporation to catch, kill, or destroy shrimp or prawn within or without the waters of this state." (Emphasis added.) See State v. Millington, 377 So.2d 685 (Fla. 1979). In section 370.15(2)(a) the legislature clearly stated its intent that the statute apply within or without the waters of Florida. No such terminology is contained in section 370.1105, the statute in issue here.
In Bethell v. Florida, the United States District Court for the Southern District of Florida expressly held that "Section 370.1105, Florida Statutes (1981) is declared unconstitutional to the extent that it attempts to exercise the authority of the State of Florida over the area which is beyond the territorial seas of the State of Florida... ." Slip op. at 1 (Summary Final Judgment). In so holding, the United States District Court recognized Skiorotes v. Florida, but determined that the Fishery Conservation and Management Act, 16 U.S.C. § 1801(b) (1976), applied. The court found that under that act the State of Florida participated as a member of the South Atlantic Fishery Management Council and in June 1982 accepted a fishery management plan which allowed the limited use of fish traps to catch saltwater finfish. The court expressly found that "whether there exists a conflict with federal law in this area of regulation is no longer open to question" and concluded that "section 370.1105 Florida Statutes has been preempted by 16 U.S.C. § 1801 et seq." Bethell v. Florida, slip op. at 3 (Order Granting Plaintiff's Motion for Summary Judgment). The court cited the Florida Third District Court of Appeal's decisions in Tingley v. Allen, 397 So.2d 1166 (Fla. 3d DCA 1981), and Livings v. Davis, 422 So.2d 364 (Fla. 3d DCA 1982), as being consistent with its decision. Finally, the court held that enforcement of section 370.1105 would violate the commerce and equal protection clauses of the United States Constitution.
The attorney general of Florida takes issue with the United States District Court's decision, noting that he is challenging that decision, and he requests that we *1355 hold this case in abeyance pending federal court resolution of his appeal. We decline to do so. The issue is whether or not Florida should be allowed to regulate the use of fish traps in extra-territorial waters pursuant to section 370.1105. The state's authority to regulate in those waters is only by the consent and acquiescence of the federal government. We find that if there is to be a confrontation between the state and the federal government, then the legislature should expressly declare that it is its intent that the statute apply in extra-territorial waters, as it did in section 370.15(2)(a) concerning shrimp. Since there is no clear expression by the legislature that it is unlawful "to set, lay, place or otherwise attempt to fish for saltwater finfish with any trap" outside the territorial waters of Florida, we find it would be improper to apply this statute to extra-territorial waters by implication and confront the federal government with its asserted validity.
Having so found, we must accept the petitioners' argument that the unlawful possession of these fish traps in the territory of the state or in its territorial waters has the effect of unconstitutionally restricting the lawful use of these traps in extra-territorial waters. We hold that the statute is valid to prohibit the use and possession of fish traps within the state and its territorial waters, but that the state, in order to prosecute for unlawful possession of fish traps, must prove, as an element of possession, the intent to unlawfully use the fish traps in the territorial waters of Florida.
For the reasons expressed, we approve in part and quash in part the decision of the district court and answer the certified question in the negative.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, EHRLICH and SHAW, JJ., concur.
McDONALD, J., dissents.