## BRAULT v STATE OF FLORIDA
### Case No. 89-0075 AC (A) 02
Fifteenth Judicial Circuit, Palm Beach County
January 10, 1991

### APPEARANCES OF COUNSEL

**Cary E. Klein, Esquire** and **T. G. Brown, Esquire,** Brown, Olson & Hanson, P.A., for appellant.

**Reginald D. Hicks,** Prosecutor for the City of Riviera Beach, for appellee.

Before MOUNTS, COLBATH, WENNET, JJ.

### OPINION OF THE COURT

MOUNTS, J.

Albert Brault was cited and found guilty of anchoring his boat in the Riviera Beach Harbor in violation of Riviera Beach City Ordinance No. 2406, § 13-52. We affirm.

Brault's boat had been moored in the Riviera Beach Harbor for over three years when, in January, 1989, the City enacted and adopted Ordinance No. 2406 relating to the regulation of boats. Ordinance No. 2406, § 13-52(a) provides that no person shall anchor any boat in the

harbor for more than 24 hours unless a written permit for such anchoring has been obtained from the Marina Director. Pursuant to subsection (f) a permit shall only be issued to a boat that is in transit from another port and is anchored within the harbor as part of such transit, or is visiting the area for a period of seven (7) days or less. Brault was issued such a seven (7) day permit on March 14, 1989. When his permit expired on March 21st he refused to move his boat and it was impounded by the Riviera Beach Police.

Appellant argues that Section 13-52 is invalid because it conflicts with Florida Statutes § 327.60(1) which specifically prohibits municipalities from regulating the Florida Intracoastal Waterway. However, subsection (2) clearly allows local authorities to prohibit or restrict the mooring or anchoring of floating structures or liveaboard vessels within their jurisdictions although they cannot regulate the anchorage of non-liveaboard vessels engaged in the rights of navigation.

At issue then was whether or not Brault lived on his boat and whether or not his boat was anchored or moored in the intracoastal waterway. He kept all his clothing on the boat as well as a substantial amount of possessions. He cooked food on the boat. He hung his clothes out to dry on the boat. He usually slept on the boat. His dog, Blooper III, had been living in the boat for two to three years. Testimony thus indicated the boat was used as a residence, i.e., a "liveaboard vessel". Brault did maintain a post office box where he received his mail, and various addresses appeared on his voter's card over the years. The trial court did not reach or decide the issue of whether the boat was Brault's "legal residence" and neither do we.

The question of the intracoastal waterway (hereinafter "ICW") arose and the trial judge reopened the case to allow testimony as to the definitial boundaries of the ICW. The testimony conflicted as to whether the ICW reached from shore to shore or whether it only was that body of water within the channel markers. Depending upon the definitial boundary of the ICW, Brault's boat either was or was not in the ICW. The trial court accepted the testimony that the ICW is a channel and does not run shore to shore and that Brault's boat was not moored within the ICW but in the marina harbor. We agree. Because Brault's boat was a liveaboard we find that § 13-52 is saved by F. S. § 317.60(2).

Appellant contends that the ordinance as written could apply to non-liveaboard vessels as well as liveaboard vessels and thus is overbroad. Appellant's brief gives an incomplete and inappropriate citation to *State v Saiez*, 489 So.2d 1125, 1127 (Fla. 1986) and erroneously argues

he has standing to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others.

However, standing to challenge the statute on such ground exists *only if* the legislation is susceptible of application to conduct protected by the First Amendment. (emphasis added) *State v Saiez,* supra at 1126 citing *Southeastern Fisheries Assn., Inc. v Dept. of Natural Resources,* 453 So.2d 1351, 1353 (Fla. 1984). Brault has not raised a First Amendment claim. What he claims is the "right" to the long-term parking of his boat.

We find Appellant's other arguments are without merit and do not require discussion.

This Court acknowledges the Amicus Curiae brief filed on behalf of the Appellant by H. Philip Hodes who identified himself as President of the National Water Rights Association. Mr. Hodes also testified for Appellant at trial. The court reporter, however, identified him as Harry Phillip Holtz and we attribute this difference to the court reporter's phonetic spelling of the name. Mr. Holtz' testimony appears at pages 61-71. On page 71 Mr. Holtz informed the trial court that he had written a book entitled "Your Right to Anchor." Under Hode's name on the amicus brief appears the note "Author, Your Right to Anchor."

Although the inconsistency in names is not a serious error, it is important for all court personnel to assist the trial court in preserving the integrity of the record. This Court is concerned about any inaccuracy.

The appellate attorneys should have brought this to the attention of the panel. AFFIRMED. COLBATH and WENNET, JJ., concur.