Mr. Frank T. Gaylord Lake County Interim Attorney 315 West Main Street Tavares, Florida 32778
Dear Mr. Gaylord:
On behalf of the Board of County Commissioners of Lake County, you ask the following question:
May Lake County use tourist development tax revenues received pursuant to section 125.0104, Florida Statutes, to acquire and construct a rail trail for use by the public?
In sum:
Expenditures from tourist development tax revenues for the acquisition of a railway right-of-way and construction of a public recreational trail would appear to be within the scope of expenditures authorized by section 125.0104, Florida Statutes.
You state that Lake County and Lake County Rails to Trails, a not-for-profit organization, are planning for the acquisition of abandoned railway rights-of-way to create a 21-mile paved pathway for bicycling, jogging, walking and horseback riding. The proposed trail would connect with similar trails in Orange and Sumter Counties and would be an attraction for bicyclists from outside the county. You indicate that Lake County is becoming well-known to bicyclists as a place for race events, training, and recreational riding, which makes the rail trail a greater attraction for tourists.
Section 125.0104, Florida Statutes, the Local Option Tourist Development Act (act), authorizes any county of this state to levy and impose a "tourist development tax."[1] This office has previously determined that the purpose of the act is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[2] Thus, the construction of publicly owned facilities financed by the proceeds from a tourist development tax must be primarily related to the advancement and promotion of tourism. The determination of whether a particular facility or project is tourist related and primarily promotes such a purpose is a factual determination that must be made by the governing body of the county. This factual determination must be based on appropriate legislative findings and due consideration of the peculiar and prevailing local conditions and needs.
The act sets forth the uses for which tourist development tax revenues may be used in section 125.0104(5), Florida Statutes, which provides:
(5) AUTHORIZED USES OF REVENUE. — (a) All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only: 1. To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . .; 2. To promote and advertise tourism in the State of Florida and nationally and internationally; 3. To fund convention bureaus, tourist bureaus, tourist information centers, and news bureaus as county agencies or by contract with the chambers of commerce or similar associations in the county; or 4. To finance beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access. (e.s.)
Thus, tourist development tax revenues may be expended for only those uses enumerated in the statute.[3]
In several instances, this office has been asked to comment on the suitability of particular projects for funding by tourist development tax revenues. For example, in Op. Att'y Gen. Fla. 83-18 (1983), this office concluded that tourist development tax revenues could properly be spent to construct a multi-purpose building to be used as a convention center and exhibition hall, a horse show arena with stables, a softball tournament center, a tennis and aquatic center, and a multi-purpose field or stadium, if such facilities are tourist related or designed and maintained primarily for the purpose of furthering the advancement, improvement, and promotion of tourism. However, this office found that parks and picnic areas were beyond the scope of the facilities allowed under section 125.0104(5)(a), Florida Statutes (1981), even if they were tourist related. I would note that the 1983 opinion was based upon a reading of the 1981 Florida Statutes. In its present form, the act allows counties with populations of less than 600,000 to use tourist development tax revenues "to acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more zoological parks, fishing piers or nature centers which are publicly owned and operated or owned and operated by notfor-profit organizations and open to the public."[4]
The term "nature center" is not defined in the statute, nor has this office previously rendered an opinion interpreting the term for purposes of expending tourist development tax revenues. In the absence of a statutory definition, the plain and ordinary meaning should be used.[5] While the term "nature center" is not generally defined, its components may be defined individually, so that the term may be given some meaning. The term "nature" is defined as "the aspect of the out-of-doors (as a landscape): natural scenery."[6] Use of the word "center" connotes "a point around which things revolve: a focal point for attraction, concentration, or activity."[7]
Given these common meanings of the terms "nature" and "center" and the use of the term "nature center" along with zoological parks and fishing piers,[8] it would appear that the Legislature contemplated that tourist development tax revenues in counties with populations of less than 600,000 persons could be used to acquire property for a project similar to a nature trail or preserve open to the public. Ultimately, however, the governing body of the county must make the determination that the expenditure of tourist development tax revenues is for a purpose that falls within the enumerated authorized uses in section125.0104(5), Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, section 125.0104(3)(b), Fla. Stat. (1993).
[2] Op. Att'y Gen. Fla. 83-18 (1983).
[3] See, Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944) (legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other manner).
[4] Section 125.0104(5)(b), Fla. Stat. (1993), as amended by Ch. 87-280, s. 5, Laws of Fla. (1987).
[5] See, Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984) (where a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning).
[6] Websters Third New International Dictionary (1981) Nature p. 1508.
[7] Websters Third New International Dictionary (1981) Center p. 362.
[8] See generally, 82 C.J.S. Statutes s. 331 (Rule of noscitur a sociis requires doubtful words and phrases used in statutes to be construed in connection with, and their meaning ascertained by reference to, the words and phrases with which they are associated).