# Third District Court of Appeal

## State of Florida

Opinion filed July 14, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1265
Lower Tribunal No. F21-6792
_____

**Alex Garcia,**
Petitioner,

vs.

**Daniel Junior, etc., et al.,**
Respondents.

A Case of Original Jurisdiction – Habeas Corpus.

Daniel J. Tibbitt, P.A., and Daniel Tibbitt, for petitioner.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for respondent The State of Florida.

Before FERNANDEZ, C.J., and LINDSEY and BOKOR, JJ.

BOKOR, J.

The early morning hours of New Year's Day, 2021, found sixteen-year-old Alex Garcia at the wheel of his mother's black Chevrolet Tahoe. Despite testimony from Garcia's mom that she gave permission only for Garcia to listen to music in the car, the State presented uncontroverted evidence, in the form of surveillance videos, body camera footage, and testimony from the responding officer and surviving crash victims that Garcia drove the Tahoe. Possessing only a learner's permit and accompanied by two 16-year-old friends, Garcia drove westbound on West Flagler Street at speeds of up to 111 miles per hour, according to black box data presented to the trial court. Speeding down West Flagler at 79th Avenue, at approximately 3:37 am, Garcia plowed into a blue Hyundai Elantra pulling into the intersection. Making contact at a black box recorded speed of 105 miles per hour (in an area with a 40 mile per hour speed limit), the Tahoe dragged the Elantra 294 feet before coming to rest, with the front of the Tahoe wedged into the driver's side of the Elantra where it initially made contact. While Garcia survived the crash unharmed, the impact killed all four occupants of the Elantra and seriously injured Garcia's passengers.

Based on the investigation into the crash, which included a blood draw and toxicology report, on April 16, 2021, the State charged Garcia by information as an adult with four counts of driving under the influence (DUI)

2

manslaughter, a second-degree felony, pursuant to section 316.193(3)(c)(3), Florida Statutes (2020), and multiple other charges.[1]  On April 19, 2021, the State moved for pretrial detention under section 907.041(4)(c), and on April 25, 2021, Garcia moved for pretrial release on reasonable conditions.

The trial court conducted a multi-day evidentiary hearing and, on April 30, 2021, granted the State's motion and ordered pretrial detention.  Garcia petitions this court for habeas relief.  Garcia argues that the trial court erred in ordering pretrial detention because the State failed to present sufficient facts to support pretrial detention.  Garcia argues that the trial court erred as a matter of law in incorrectly interpreting the statutory prerequisites before ordering pretrial detention, and that the trial court erred in making factual findings unsupported by the record.  The State argues otherwise, claiming that the evidence presented a sufficient basis under the relevant statutory scheme for the trial court to exercise its discretion and order no pretrial release.

---

[1]  The State also charged Garcia with four counts of vehicular homicide/reckless manner, a second-degree felony, section 782.071(1)(A); and two counts of DUI causing serious bodily injury, a third-degree felony, section 316.193(3)(c)(2).  We focus on the DUI manslaughter charge as it is the basis for the State seeking pretrial detention.

## STANDARD OF REVIEW

We review *de novo* legal conclusions regarding the meaning of a statute. BellSouth Telecomm., Inc. v. Meeks, 863 So. 2d 287, 289 (Fla. 2003) ("Statutory interpretation is a question of law subject to *de novo* review."). We review the trial court's factual determinations under an abuse of discretion standard. Specifically, we look to determine whether competent substantial evidence exists in the record to support the trial court's findings of fact. Quevedo v. So. Fla. Water Management Dist., 762 So. 2d 982, 988 (Fla. 4th DCA 2000) (explaining that the findings of a lower tribunal or agency may be set aside only where "not supported by competent substantial evidence in the record") (citations omitted).

## LEGAL ANALYSIS

For non-capital offenses not punishable by life imprisonment, the Florida Constitution mandates "pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons . . . the accused may be detained." Art. I, § 14, Fla. Const.; see also Fla. R. Crim. P. 3.131(a). For a non-capital, non-life punishable offense delineated as a "dangerous crime," including DUI manslaughter, the statutory scheme codifies "the intent of the Legislature that the primary consideration be the protection of the community from risk

4

of physical harm to persons." § 907.041(1), Fla. Stat. (2020). The statute continues, instructing that the trial court "may order pretrial detention" upon finding a "substantial probability" that Garcia committed "DUI manslaughter as defined by section 316.193" and that Garcia "poses a threat of harm to the community." Id. at (4)(c). The trial court held the evidentiary hearing in two phases, first determining by a substantial probability that Garcia committed the offense and next determining by a substantial probability that he posed a threat of harm to the community, and that no conditions of pretrial release would appropriately mitigate that threat. We will take each in turn in the order addressed by the trial court.

<u>Substantial Probability That Garcia Committed DUI Manslaughter</u>

First, the trial court found a substantial probability that Garcia committed DUI manslaughter based on evidence presented including testimony at the hearing from the first responders on the scene, a review of the bodycam footage showing at least one incident of slurred speech and one incident of stumbling as Garcia attempted to sit, the toxicology report from Garcia's blood draw taken at the hospital two hours after the crash showing the presence of alcohol (blood alcohol level of .062), THC and THC metabolites, operating a vehicle at almost three times the posted speed limit

5

on a surface road,[2] the Tahoe's limited or nonexistent braking before impact, and Garcia's impaired situational awareness (e.g., driving past Officer Lozada in a marked unit and not slowing down or otherwise reacting, showing a lack of peripheral awareness).

Garcia notes testimony regarding Garcia's lack of bloodshot eyes, his alertness at the scene, the lack of odor or presence of alcohol or marijuana in Garcia's vehicle, and the lack of a field sobriety test, among other facts in evidence. But the trial court is in the best position to weigh these facts and determine the probability that Garcia was "under the influence of alcoholic beverages" or controlled substances "when affected to the extent that [his] normal faculties [were] impaired" at the time of the crash. § 316.193(1)(a), Fla. Stat.[3] We will not reweigh or otherwise disturb the trial court's

---

[2] Excessive speed of the vehicle and the type of road, while not elements of the charged offense, may be considered in context as possible indicia of impaired judgment. See, e.g., State v. Kliphouse, 771 So. 2d 16, 23 (Fla. 4th DCA 2000) (noting in the context of probable cause for DUI, "other components central to developing probable cause may include the defendant's **reckless or dangerous operation of a vehicle, slurred speech, lack of balance or dexterity**, flushed face, bloodshot eyes, admissions, and poor performance on field sobriety exercises") (emphasis added). Evidence of impaired judgment goes to the totality of the circumstances considered by the trial court, and, ultimately, our determination under the abuse of discretion standard that substantial competent evidence supported the trial court's factual findings.

[3] The parties stipulated to other necessary elements of DUI manslaughter, that the victims are deceased, and that Garcia was driving or in actual physical control of the vehicle.

determinations absent an abuse of discretion. The trial court did not abuse its discretion where, as here, competent substantial evidence supports its findings. See Stephens v. State, 748 So. 2d 1028, 1034 (Fla. 1999) (explaining a reviewing court's deference to the trial court's findings of fact where "based on competent, substantial evidence" because "the trial court is in a superior position 'to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses'") (internal citations omitted).

Threat of Harm to the Community

Second, the trial court examined the evidence presented and determined that Garcia posed a substantial probability of threat of harm to the community and that "there are [no] conditions of release sufficient to protect the community from risk of physical harm to persons." Apr. 20, 2021, Transcript at 77:20-22. In making such a finding, the trial court listed multiple factors that led it to such a conclusion. Garcia takes issue with the finding on two bases, one legal (subject to *de novo* review) and one factual (subject to an abuse of discretion/competent substantial evidence review).

Garcia argues as a matter of law that a correct reading of section 907.041 bars a finding of threat of harm as applied to the facts in the record. In sum, Garcia argues that the use of the conjunction "and" in section

7

907.041(4)(c), means that a court must make findings pertaining to all of the factors separated by "and" before deeming Garcia a threat of harm to the community. We agree that "and" is conjunctive but disagree that it leads to the result Garcia suggests. The subsection at issue must be read in the context of the entire section, relying on plain language, and using common sense. But we do not read a word or a phrase in such a way to create "an unreasonable or ridiculous conclusion." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984).[4] The use of "and" in the context of (4)(c) simply means that the

_____

[4] The Florida Supreme Court sets forth the standards we employ in determining the meaning of a statute:

> In interpreting the statute, we follow the "supremacy-of-text principle"— namely, the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012). We also adhere to Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833), *quoted* in Scalia & Garner, *Reading Law* at 69).
>
> We thus recognize that the goal of interpretation is to arrive at a "fair reading" of the text by "determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Scalia & Garner, *Reading Law* at 33. This

8

court must find a substantial probability of threat of harm after analyzing "past and present patterns of behavior, the criteria in s. 903.046, and any other relevant facts, that any of the following circumstances exist." § 907.041(4)(c), Fla. Stat. The court engaged in such an analysis.

Garcia makes much of a case in which the Florida Supreme Court found "and" to be conjunctive and found that the relevant statute in that case required a finding of both elements separated by the "and." See Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 686 So. 2d 1349, 1354-55 (Fla. 1997) (holding that the phrase "permanently and substantially mentally and physically impaired" should be read in the conjunctive). But counsel oversimplifies the holding, and the context. In explaining the holding, the court examined the effect of the use of "and" and noted "situations where the word 'and' or 'or' could not be read literally or

---

requires a methodical and consistent approach involving "faithful reliance upon the natural or reasonable meanings of language" and "choosing always a meaning that the text will sensibly bear by the fair use of language." Frederick J. de Sloovère, *Textual Interpretation of Statutes*, 11 N.Y.U. L.Q. Rev. 538, 541 (1934), *quoted* in Scalia & Garner, *Reading Law* at 34.

Ham v. Portfolio Recovery Assocs., LLC, 308 So. 3d 942, 946-47 (Fla. 2000).

given its ordinary meaning because to do so would lead to unreasonable, absurd results and thus defeat the legislature's intent." Id. at 1355.[5]

Simply put, the trial court must decide if substantial probability exists after considering all the specifically enumerated factors as well as the catch-all, any other relevant facts. The trial court would not be free to ignore facts supporting (or refuting) one element simply because it found another element existed. The "and" in this context following "based on" means the

---

[5] Fla. Birth-Related Neurological Injury Comp. Ass'n, then, focused on the context and purpose of "and" in that statute. In discussing the meaning of words or phrases in a statute, the Florida Supreme Court explained:

> Where, as here, the legislature has not defined the words used in a phrase, the language should usually be given its plain and ordinary meaning. Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla.1984). Nevertheless, consideration must be accorded not only to the literal and usual meaning of the words, but also to their meaning and effect on the objectives and purposes of the statute's enactment. See Florida State Racing Comm'n v. McLaughlin, 102 So.2d 574 (Fla.1958). Indeed, "[i]t is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided [in construing enactments of the legislature]." State v. Webb, 398 So.2d 820, 824 (Fla.1981).

Id. at 1354. This guidance supports reading "and" in context. "And" can still mean "and" and conform with the legislative intent, without leading to the result that Garcia suggests. In the instant statute, the phrase "based on" begins the clause in which the "and" appears. § 907.041(4)(c), Fla. Stat. The plain meaning, which is also the most harmonious with the intent of the statute, results in reading "and" to create the universe of factors a trial court must consider before determining a substantial probability of danger exists.

trial court must conduct a thorough analysis and consider and weigh all relevant factors listed in (4)(c) in determining if a substantial probability of danger to the community exists. The transcript of the hearing reveals that the trial court's analysis and findings comported with the statutory scheme. The trial court analyzed all the facts and noted the presence of some factors listed in (4)(c), the absence of others, and after carefully weighing all of them, concluded that the State met its burden of showing substantial probability.

Similarly, section 907.041(4)(c)4.a.-c. provides a non-exhaustive list of "conditions that would support a finding by the court pursuant to this subparagraph that the defendant poses a threat of harm to the community." Importantly, despite Garcia's argument to the contrary, the statutory scheme does not require the trial court to find all the factors here, or indeed any of them from this subsection. Instead, the statute sets forth conditions that, as part of the overall analysis, would support a finding of a threat of harm to the community. Subsection (4)(c)5. further refutes Garcia's parsed reading of the statute.[6] Garcia's reading of 4(c) and 4(c)4. would render 4(c)5. mere

---

[6] While (4)(c)4. addresses DUI manslaughter, (4)(c)5. expands on the concept of threat of harm to the community. One section logically follows the other, and all are tied in to (4)(c). "'It is axiomatic that statutes must be read with other related statutes and other related portions of the same statute.'" Abbott Labs. v. Mylan Pharms., 15 So. 3d 642, 657 (Fla. 1st DCA 2009) (quoting State v. Negrin, 306 So. 2d 606, 607 (Fla. 1st DCA 1975)); see also id. ("'Where possible, courts must give effect to *all* statutory

surplusage, despite the fact it is part of the same subsection and addresses the specific issue of threat of harm to the community.  See Hechtman v. Nations Title Ins. of NY, 840 So. 2d 933, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."). Accordingly, we hold that (4)(c) lists factors the trial court shall rely on in making its ultimate determination of substantial probability of threat of harm, but that such determination does not require finding the presence of all factors the trial court may consider.

With our holding that the trial court correctly applied the law pertaining to a finding of threat of harm, we now review its ultimate determination for competent substantial evidence.  Here, the presence or absence of specific factors listed in (4)(c) may come into play, as it goes to the weight and sufficiency of the evidence.  However, at the appellate review level, we will not disturb the trial court's findings absent an abuse of discretion.  Canarkis v. Canarkis, 382 So. 2d 1197, 1203 (Fla. 1980) (recognizing the "superior vantage point of the trial judge" in weighing facts and performing

---

provisions and construe related statutory provisions in harmony with one another.'") (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992)).

12

discretionary acts and noting no abuse of discretion where "reasonable [people] could differ as to the propriety of the action taken by the trial court").

The trial court, based on evidence in the record, made specific factual findings under (4)(c) to support its conclusion that Garcia poses a substantial probability of risk to the community. Further, the trial court relied on the facts in the record to determine that no conditions of pretrial release would reasonably protect the community. Based on the evidence presented, the trial court found a substantial probability that Garcia would not "follow the rules" and "act in conformity with the law." In determining that no pretrial release conditions sufficiently protected the community, the court noted Garcia's "disregard for safety" as well as "serious concerns about supervision."

Despite these tragic facts, reasonable people may differ on the conclusion of whether these factors together rise to a "substantial probability." However, in reviewing the record for abuse of discretion, we only determine if the facts in evidence provide competent substantial evidence for each of the trial court's findings. Similarly, in weighing the evidence, the trial court may exercise its reasonable discretion without second-guessing or re-weighing of factors by the appellate court. See De Groot v. Sheffield, 85 So. 2d 912, 9016 (Fla. 1957) ("the reviewing court will

not undertake to re-weigh or evaluate the evidence . . . [t]he appellate court merely examines the record to determine whether the lower tribunal had before it competent substantial evidence to support its findings"); see also Canarkis, 382 So. 2d at 1203.

Petition denied.