988 So.2d 698 (2008)
Michael MORTON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-1623.
District Court of Appeal of Florida, First District.
August 8, 2008.
*699 Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Daniel A. David and Michael T. Kennett, Assistant Attorneys General, Tallahassee, for Appellee.
KAHN, J.
Appellant Michael Morton challenges his conviction for felony hazing, an offense created and proscribed by recent legislation. See Ch. 2005-146, § 3, Laws of Fla. The statute criminalizes hazing as a rite of initiation into student organizations at Florida's colleges and universities, and makes it a felony to participate in hazing activities that result in "serious bodily injury." § 1006.63(2), Fla. Stat. (2005). The State prosecuted Morton together with Jason *700 Harris, whose direct appeal we have considered along with this case, as well as three other former Florida A & M University students who, the State alleged, participated in a fraternity hazing ritual during which the victim was beaten repeatedly with canes. The jury convicted Morton and Harris but could not reach verdicts as to the other three co-defendants.
In this appeal, we reject Morton's challenge to the constitutionality of Florida's hazing law and his arguments regarding the sufficiency of the evidence. For reasons we will describe, however, we reverse his conviction and remand for a new trial because of an erroneous jury instruction that impermissibly narrowed the range of findings jurors could have made in order to acquit. We need not reach Morton's remaining argument seeking a new trial based upon a contempt citation issued to co-defendant Harris' counsel.

Background
In April 2006, the State filed an information charging Morton, Harris, and co-defendants Brian Bowman, Cory Gray, and Marcus Hughes with felony hazing pursuant to section 1006.63(2), Florida Statutes (2005), which creates a third-degree felony for participation in hazing activities, including beatings, that result in "serious bodily injury." The issues on appeal emanate entirely from the provision's reference to "serious bodily injury," so the statutory definition of hazing does not enter into our consideration of this case. A factual account of the former fraternity members' trial is necessary to the legal analysis that follows. We here describe facts relevant to our conclusions.

A. The Initiation
The victim, a former FAMU student named Marcus Jones, was a sophomore when he sought initiation into the campus chapter of the Kappa Alpha Psi fraternity during the 2005-06 academic year. Jones' efforts to join the fraternity culminated in a series of initiation rituals conducted the nights of February 23-24 and 26-27, 2006.
On the first and second nights, Jones and approximately twenty other candidates for initiation were driven to a Tallahassee-area residence where they were blindfolded, verbally harassed, and beaten about their faces and, with canes, upon their buttocks during rituals described as "preliminaries." Jones estimated he received approximately sixty cane strikes to his buttocks over the course of those two evenings. Because he was blindfolded, he did not see who struck him.
During the sessions of February 26-27, the ritual apparently intensified. Jones and the other membership candidates were taken to what Jones described as an abandoned warehouse and, once inside, made to form a line. Jones said that Harris, Bowman, Gray, Hughes, and Morton introduced themselves to the pledges as their "daddies"; Morton appeared to be the ranking member present, the "Big Daddy," and called himself "Daddy Go-4 Play." Harris was known as "Daddy Swagger."
The fraternity members, other than Harris, shortly began striking the pledges' buttocks with canes. Jones said the blows were "pretty hard." Evidence established that several candidates, including Jones, passed out. Undisputed evidence established that Harris did not actually strike the candidates, but rather worked as "the doctor of the group," reviving candidates when they passed out by pouring water over them and instructing them to "get back in line." Altogether, Jones sustained roughly 210 cane strikes during the four-night initiation. He received approximately 150 of those strikes in the warehouse on February 26-27, the dates pertinent to the present charges.

*701 B. The Injuries

Jones noticed swelling and bruising of his buttocks after the February 23-24 rituals, but after the February 26-27 rituals, he had difficulty walking because of the swelling to his legs. He recounted that, during a drive to his parents' home in the Atlanta area the following Saturday (five days after the last ritual), his buttocks were still bleeding.
Dr. David Fern, a surgeon who treated Jones the following week in an Atlanta-area hospital, appeared as an expert witness in general surgery and testified that Jones sustained "a real bad injury to the buttocks" that caused a hematoma, swelling, and a condition in which "part of the skin had died." Dr. Fern testified that Jones sustained "an injury where the soft tissue and skin get completely separated from the underlying tissue." Dr. Fern described the wound as marked by necrosis  dead skin that "has lost its bloody supply and [is] non-living. It's on its way to complete disintegration." Under general anesthesia, Jones underwent a surgical procedure for debridement of the wound and removal of the hematoma.
Dr. Kenneth Lee, an internist who reviewed the evidence for the defense, disagreed with certain of Dr. Fern's opinions, testifying that "at no time was [Jones'] life in danger, at no time was he at risk of losing a limb, at no time was he at risk of having any permanent disability from his injury." Dr. Lee concluded Jones had a "little hematoma," but that the tissue was not necrotic and, indeed, was beginning to heal on its own. He opined that surgical intervention would not have been necessary. Michael Martinelli, a physician's assistant in the emergency room where Jones was initially treated, testified he observed no signs of infection or an abscess in the wounds.
At trial in December 2006, ten months after the hazing, Jones had to sit on a pillow, testifying, "[I]t hurts when I sit down for a long period of time." He said he could walk by then and perform routine life chores such as dressing himself, but he could not run or play football.

C. The Trial
An earlier trial of the five defendants ended in a mistrial when jurors were unable to reach verdicts. Seventeen witnesses testified at the second trial in December 2006. The jury heard testimony from Jones and two other pledges who underwent the ritual alongside him, as well as from the police investigator who initially inquired into the hazing ritual, fraternity officials, and medical experts for both the State and the defense, among others.
After the evidentiary phase, and over objections from Morton's attorney and counsel for the other defendants, the trial court instructed the jury that "serious bodily injury"
defines itself and is understood by its everyday common usage. The word "serious," when used to define the degree of bodily injury, means dangerous, grave, grievous, or great, as distinguished from slight. It is a bodily injury which has important or dangerous possible consequences. Serious bodily injury may include, but does not require, serious permanent disfigurement or a protracted loss or impairment of the function of a bodily member or organ. The determination of whether a bodily injury constitutes serious bodily injury is solely a question of fact for the jury.
Omitted from the instruction was a distinction between "serious," "moderate," and "slight" injuries, which the judge had explained when instructing the jury for appellant's first trial. Building upon this jury instruction, the prosecutor maintained during closing argument that "[s]erious is *702 distinguished from slight. The injury sustained by Marcus Jones was by no means slight."
On December 15, 2006, the jury convicted Morton and Harris as charged. The jury, however, could not reach verdicts and the court declared a mistrial as to Bowman, Gray, and Hughes. The court sentenced Morton and Harris to two years' incarceration in the Department of Corrections, followed by three years' probation. Morton and Harris have appealed their convictions and sentences. See Harris v. State, 987 So.2d 807 (Fla. 1st DCA 2008). We conclude that Morton must receive a new trial.

Analysis

A. Constitutionality of Section 1006.63(2), Florida Statutes (2005)
Morton first challenges the constitutionality of Florida's felony hazing law, arguing the statute is facially void for vagueness because it provides that one commits a third-degree felony by participating in hazing activities that cause "serious bodily injury," but does not specify what constitutes "serious bodily injury." § 1006.63(2), Fla. Stat. (2005). We reject appellant's facial challenge because we conclude the statute is not vague in light of the facts of this case.
A statute is vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). To declare the felony hazing law void for vagueness, we must find the statute "impermissibly vague in all of its applications." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The Legislature's failure to define a critical term does not by itself render a statute unconstitutionally vague. See State v. Fuchs, 769 So.2d 1006 (Fla.2000); State v. Hagan, 387 So.2d 943, 945 (Fla.1980). In the absence of an internal definition in the statute, we can consider the dictionary definition of the word "serious" to ascertain its meaning in everyday usage. See Hagan, 387 So.2d at 945. The dictionary defines "serious," in the context of an injury, as "having important or dangerous possible consequences." WEBSTER'S NEW COLLEGIATE DICTIONARY 1050 (5th ed. 1973).[*] Black's Law Dictionary supplies a similar meaning: "dangerous; potentially resulting in death or other severe consequences." BLACK'S LAW DICTIONARY 1398 (8th ed. 2004).
Our constitutional analysis begins with the facts of this case, because a statute cannot logically be vague in all applications if it is not vague as applied to the actual facts. See Travis v. State, 700 So.2d 104, 106 (Fla. 1st DCA 1997). Evidence at trial established that Morton participated in a two-day caning ritual during which the victim sustained 150 cane strikes to his buttocks. Dr. Fern testified that Jones' skin separated completely from the underlying tissue, resulting in a hematoma whose removal required surgery under general anesthesia. Jones testified his buttocks were swollen and bleeding and that he could not walk after the initiation events; even at trial some ten months later, he had to sit on a pillow to mitigate the pain of sitting down.
A person of ordinary intelligence would reasonably expect to incur criminal sanctions under the hazing statute if he or she *703 helped inflict such injuries, which a reasonable person would regard as serious in the run of commonly accepted definitions of the term. A defendant in a future, marginal case with evidence of lesser injuries might challenge the statute as applied to the facts of that particular case, but the wording of the statute here at issue would inevitably have given appellant "fair notice that his contemplated conduct is forbidden." Harriss, 347 U.S. at 617, 74 S.Ct. 808.

B. Sufficiency of the Evidence to Support the Felony Hazing Conviction
Appellant also argues the evidence adduced at trial was not sufficient to establish that Jones sustained a serious bodily injury. We reject this argument because competent, substantial evidence established that Jones sustained an injury that jurors could have concluded was serious. Although the defense presented medical testimony that cast aspersions on prosecution experts' assessment of the severity of Jones' injuries, the evidence, viewed in the light most favorable to the State, was sufficient to support a conviction. Morton is not entitled to reversal for want of legally sufficient evidence.

C. Jury Instruction Regarding the "Serious Bodily Injury" Element
Appellant argues the trial court erred in instructing the jury on the definition of "serious bodily injury." As pertinent for review of the jury instruction, the statute at issue here provides:
A person commits hazing, a third degree felony, punishable as provided in s. 775.082 or s. 775.083, when he or she intentionally or recklessly commits any act of hazing as defined in subsection (1) upon another person who is a member of or an applicant to any type of student organization and the hazing results in serious bodily injury or death of such other person.
§ 1006.63(2), Fla. Stat. (2005). As discussed in our constitutional analysis, the statute does not supply a definition of the phrase "serious bodily injury." We have deconstructed the multi-layered jury instruction actually given regarding the definition of "serious bodily injury" and have identified up to four possible meanings, or keys for determining the meaning, of that phrase within the single instruction. To quote from the trial court's instruction (numbers and emphasis added):
(1) Serious bodily injury defines itself and is understood by its everyday common usage.
(2) The word "serious," when used to define the degree of bodily injury, means dangerous, grave, grievous, or great, as distinguished from slight. It is a bodily injury which has important or dangerous possible consequences.
(3) Serious bodily injury may include, but does not require, serious permanent disfigurement or a protracted loss or impairment of the function of a bodily member or organ.
(4) The determination of whether a bodily injury constitutes serious bodily injury is solely a question of fact for the jury.
Parts one and four suggest that the jury should find, in its sole discretion and as a matter of fact, whether a purported victim has sustained serious bodily injury. These clauses are consistent with the common practice in prosecutions under the aggravated battery statute, in which the jury determines whether, in fact, the victim has sustained "great bodily harm," a similar quantum of injury. See § 784.045(1)(a)1., Fla. Stat. (2005); Fla. Std. Jury Instr. *704 (Crim.) 8.4(2)(a) (whether victim sustained great bodily harm under aggravated battery statute is question of fact for jury). Neither the aggravated battery statute nor its corresponding jury instruction contains a definition of great bodily harm. As in aggravated battery prosecutions, the trial court could permissibly instruct the jury members that they would be the sole determiners of whether serious bodily injury had occurred. Clauses one and four, as disassembled above, provide such a charge.
The third part of the instruction regarding "serious bodily injury" provides elements that the jury might consider but that do not necessarily comport with the everyday common usage referenced by the judge in the first part. Despite that, we would not find a fatal defect solely by the judge's inclusion of part three of the instruction. We thus examine part two of the instruction, the part to which appellant most strenuously objected.
Although the instruction sets out several synonyms for "serious" ("dangerous," "grave," "grievous," and "great"), it identifies only one degree of injury  a "slight" injury  that would warrant acquittal. We conclude that once the judge determined to contrast degrees of injury, error occurred when the instruction excised only slight injury from those degrees and types of injury that could, in the discretion of the jury, constitute serious injury. Appellant makes the persuasive argument that the instruction as given effectively allowed jurors to convict if they found that the victim's injuries were anything more than slight.
Extant case law strongly suggests that once the judge instructs on the distinction between the various degrees of "serious" and the remaining degree of "slight," the judge should also instruct on the difference between "serious" and "moderate." Courts have held that, under the aggravated battery statute, "moderate" injuries do not amount to "great bodily harm," a phrase that both parties suggest, to varying degrees, is roughly equivalent to "serious bodily injury." See, e.g., Smith v. State, 969 So.2d 452, 455 (Fla. 1st DCA 2007) (observing that "great bodily harm is `distinguished from slight, trivial, minor, or moderate harm'") (quoting C.A.C. v. State, 771 So.2d 1261, 1262 (Fla. 2d DCA 2000)); Nguyen v. State, 858 So.2d 1259, 1260 (Fla. 1st DCA 2003) (same); Chesnoff v. State, 840 So.2d 423, 426 (Fla. 5th DCA 2003) (same). These cases track the broader theme in Florida criminal law that, in general, a victim can sustain one of three degrees of injury: slight, moderate, and severe. See Fla. R.Crim. P. 3.992 (Criminal Punishment Code score sheet template, listing injuries categories as slight, moderate, and severe). Although we do not hold that the trial court was necessarily required to explain different degrees of injury in this case, we find error in an instruction that, having trod that path, deleted reference to the moderate degree, which would not have been sufficient to support a conviction for felony hazing.
We cannot conclude the error in the jury instruction was harmless beyond a reasonable doubt. The prosecutor, in keeping with the jury instruction, told jurors during closing argument, "Serious is distinguished from slight. The injury sustained by Marcus Jones was by no means slight." Moreover, the jury heard substantial testimony from defense witnesses who disagreed with prosecution experts' testimony that Jones had a hematoma that may have been infected, presented signs of necrosis, and required immediate surgical intervention.
The evidence, on balance, required the jury to weigh the experts' competing testimony; during that process, if the jury *705 believed the defense experts, jurors could have concluded that Jones' injuries were worse than slight, but less than serious, and could have acquitted had the trial court not given such a limiting instruction requiring them to choose between "slight" and "serious." Morton is entitled to a new trial because of the error.

Conclusion
We reject Morton's facial challenge to the constitutionality of the felony hazing statute and his challenge to the legal sufficiency of the evidence. We find the court erred in instructing the jury that "serious" injuries are distinguished only from "slight." Because Morton is entitled to a new trial on the basis of the erroneous jury instruction, we do not reach the argument that a contempt citation issued to his co-defendant's attorney vitiated the entire trial. Accordingly, we REVERSE appellant's conviction and sentence and REMAND for a new trial.
BARFIELD and WEBSTER, JJ., concur.
NOTES
[*] Although the definition quoted dates to 1973, we note that the ordinary meaning of the word "serious" has not changed over the last thirty-five years. The trial court tracked the Webster's definition in the charge to the jury.